Good morning, your honors. May it please the court. I'd like to reserve two minutes of my time for rebuttal, if I may. My name is Levi Robison. I'm a deputy Yellowstone County attorney. I represent Pedro Hernandez and Derrek Skinner. Pedro Hernandez is a former Yellowstone County Justice of the Peace. Derrek Skinner is a former Yellowstone County Deputy Sheriff. They have appealed from the district court order denying them qualified immunity. There are two main issues before the court this morning. The denial of qualified immunity as to Pedro Hernandez and the denial of qualified immunity as to Derrek Skinner. The district court erred when it denied Pedro Hernandez qualified immunity. He did not violate Miguel Hernandez's right against unreasonable searches and seizures with his request for an investigation.   He did not, he was not an integral participant in the alleged violation of Miguel Hernandez's right against unreasonable searches and seizures. Would any of this have happened if the judge had not had his staff call the sheriff's department? Probably not, your honor. However, even under a but-for analysis, there still requires a wrong. Calling the sheriff's office and requesting an investigation is not a wrong. It doesn't make him liable for a violation of the Constitution because providing information to law enforcement in that way is not a constitutional violation. Now, why did he do this? Why did he do this? Because he heard testimony that during a court order, during a court proceeding, that some of the witnesses were illegally in the United States. Which is indicative of potential crime. What's the crime? The crime would be an unlawful entry. Was there anything there that he heard from the witnesses that suggested that they unlawfully entered the country? Potentially, the fact that they came into Texas is where they were illegally present first originally. However, we agree that it's truly just knowledge of a legal presence standing alone. That's all it is. Our case law is pretty clear that presence alone isn't sufficient for criminality purposes. And that would go more towards Derek Skinner, that we request that the court would request an on-law. Why wouldn't that also apply to the judge? Because he didn't conduct a detention or arrest. He didn't participate in the detention or arrest. He didn't supervise the detention or arrest. All he did was request an investigation and provide information to law enforcement. Of potential criminal activity. Of potential criminal activity. And that can't, he's not integral participant either. Because he didn't conduct the detention or arrest, didn't supervise, and didn't participate. His involvement ended after he spoke to Derek Skinner in the courtroom. He provided the information. Derek Skinner went out and conducted the detention. What did he say to Derek Skinner when Derek Skinner, the officer, arrived in the courtroom? So when the officer arrived in the courtroom, he came in and he said, I've got testimony from these two, the two women in the courtroom, that the two gentlemen, there was originally two gentlemen, one had left the courthouse prior to Derek Skinner's arrival, that they are illegally in the country. And you may want to do something, you might want to call immigration. He didn't say you're going to arrest them, you're going to take them down to the jail, and then you're going to call them. He didn't. And you don't think that's some evidence of integral participation? Yeah, I'm sorry, Your Honor. You don't think that's some evidence of integral participation? No, I do not, Your Honor. Because the violative act in this case is alleged to be the detention and arrest. Requesting an investigation, a justice of the peace is not a supervisor. He cannot control the actions of Derek Skinner. He's just, he can't do it. So, therefore, he is not an integral participant. And if he's not an integral participant and he did not commit an unconstitutional act himself, he must be granted qualified immunity. Now, the situation with Derek Skinner is that this court cannot overrule Melendrez. It could request an en banc reconsideration of it. Derek Skinner believes Melendrez does not comport with previous case law. There is suspicion, there is reasonable suspicion to detain someone to conduct an investigation when they have knowledge of illegal presence. Previous cases have shown, have stated, that illegal presence is indicative that a crime may have been committed, the crime of illegal entry. That's enough to be reasonable suspicion. Reasonable suspicion is more than an instinct. It's more than a hunch. It's when an officer can articulate facts that support it. What are the facts that the officer articulated for reasonable suspicion that a crime either had occurred or was in progress? There is sworn testimony during a court proceeding that a particular individual is in the United States illegally. That, before Melendrez, was reasonable suspicion. He can articulate, I have knowledge that this individual is illegally in the United States. That could be a crime. That could just be a civil violation, which he could not enforce. But it could be a crime. Gonzalez, Medina, that is an indication a crime may have occurred. He should be allowed to detain the person to ascertain whether it's one or the other. However, beyond Melendrez, the district court did err when it determined that the arrest occurred when Derek Skinner restrained Miguel Hernandez. I'm sorry? The district court erred when it determined the arrest occurred when he restrained Miguel Hernandez outside the courtroom. The arrest occurred after the request from ICE to arrest him. Was he free to leave when he was not? However, a person is— Isn't that a pretty good sign that somebody might be in detention when they're not free to leave? No. Even under an investigatory stop, a person is not free to leave until the stop is over. How about he's not free to leave and he put handcuffs on him, correct? He did. My supposition is that that is in part due to the communication barrier. He was not able to communicate freely with Miguel Hernandez. Miguel Hernandez attempted to leave prior to the questioning being done. He was only talking to him for about two minutes. So in your estimation, when was he placed under arrest? When did the detention sort of evolve into an arrest? The detention became an arrest after ICE requested it, and he began driving him down to the detention facility. But only when ICE showed up and took him into custody? No, no. After ICE returned the phone call saying, yes, we do want him picked up. Because during that time, Derek Skinner took him down to the front of the courthouse. Yes, he placed him in the back of the patrol vehicle, but he left the door open. He allowed him to speak with his wife freely. He allowed him to give his wife his coat. So they were allowed to communicate. That doesn't happen when a person is placed under arrest. He was in the back of the police vehicle. Was he handcuffed? Yes, he was. That is a department policy. Any person in the back of a patrol vehicle will be restrained. So from the viewpoint of a reasonable, innocent person, if they believe they were under arrest, they would be like, oh, I'm going off to jail. And he wasn't. He understood that a reasonable, innocent person would have understood, oh, okay, they're running a warrants check. They're asking if ICE wants me picked up. If not, I'm going to be free to go. So it was still just a continuation of the detention up until the request from ICE, and then Derek Skinner took him to the detention facility. Okay. If there are no other questions, I would reserve the remainder of my time. Okay. Let's hear from the other side, and then you can use your time for rebuttal. Good morning. May it please the Court, I'm Matt Adams with Northwest Immigrant Rights Project. On behalf of Mr. Renaga, the Plaintiff appellee. Now, defendants have repeatedly asked this court to reject its controlling precedent. In doing so, they effectively concede that the district court, in fact, correctly applied the law as established by this court in cases like Melendrez v. Arpaio and Boyd v. Benton County. In attacking Melendrez, defendants argue that it was not based upon precedent. And while we disagree with this argument, it ignores the more fundamental and obvious point, and that is that Melendrez itself established clear precedent, placed any reasonable state official on notice that, as Judge Wallace explained in Melendrez, because unauthorized presence is not a criminal matter, suspicion of unauthorized presence alone does not give rise to an inference that criminal activity is afoot. And that, of course, was five years before Mr. Renaga was arrested. In fact, that same year, the Supreme Court reaffirmed that principle, asserting that, as a general rule, an immigration violation is not a crime, and accordingly it doesn't provide the normal predicate for an arrest. So the district court did not err in finding that there was no reasonable suspicion because there was no particularized and objective basis upon which to suspect criminal activity. And I'd like to emphasize the objective component of that. Defendants repeatedly assert their ignorance of immigration law as though that were a shield. But, of course, the qualified immunity analysis is an objective inquiry, and this court looks to whether a reasonable officer should have known the law. And as the Supreme Court has explained in cases like Hope v. Pelter, that analysis is performed by looking to see whether the law was clearly established at the time the officer acted. And, of course, the law was clearly established. Defendants' decision to detain Mr. Renaga based upon an area of law that they're ignorant and also an area of law in which they're not authorized to enforce only underscores that the district court correctly denied them qualified immunity. And, of course, the decision about whether ICE subsequently asked them to bring him to the jail is irrelevant to the district court's order, because the district court focused on the acts that occurred prior to the communication with ICE. And defendants in the undisputed facts acknowledge that Mr. Renaga was detained from the moment the deputy Skinner left the courtroom and confronted him and then interrogated him in the hallway. The district court, relying on these undisputed facts, found that it became a full-blown arrest when, after that interrogation,  took him down from the sixth floor, out of the court, out to the parking lot, and placed him in his vehicle and then proceeded to do more checks for warrants and go through databases and then finally had dispatch call up ICE and, after a second call from ICE, ended up transporting him to the jail. But, ultimately, whether that was a full-blown arrest or prolonged, continued detention does not matter, because, again, defendants did not have suspicion of criminal activity, and so they had no base even for a temporary detention. And now defendants argue that Defendant Hernandez is in a different position. Defendant Hernandez protests that he just requested that immigration excuse me, not that immigration, that the sheriff's office come to investigate his detention, his immigration status. But, of course, it wasn't just to investigate. He called up the sheriff's office, and the district court cited to the transcript, and there's undisputed facts, that he called up asking that they come pick up Mr. Renaga. And it wasn't, and I want to cite to his words that the district court also used in making a fact finding. It says, that I, call me a deputy, I have two illegals sitting outside, I want them picked up. And defendants, in undisputed facts, acknowledge that when someone, when the sheriff, when the judge asked the sheriff to pick someone up, that normally is understood to be an arrest. But whether it was asking them to be picked up, to be arrested, or simply to be detained while they investigated, either way, there was no suspicion of criminal activity. So Defendant Hernandez had specifically requested the sheriff's office to initiate this detention, in order to investigate what he mistakenly understood to be a crime, unlawful presence. And, in fact, in his deposition, in his affidavit, he always referred to it as the crime of unlawful presence. There is never any assertion by either defendant of suspicion of a crime of entry. That's just a red herring thrown up after the fact to try to justify their unlawful actions. And, in fact, as this court made clear in Boyd v. Benton County, that even if Defendant Hernandez's individual actions do not rise to the level, in and of themselves, of a constitutional violation, if he's an integral participant in that operation, then he is liable. And in Boyd, the court looked at whether the other defendants were aware of the decision to unlawfully act, whether they objected to that decision, and whether they participated in that operation. Here, Defendant Hernandez is even more culpable. He was not just aware of the decision. He had initiated it. He had instructed the sheriff's office to pick up Mr. Reynaga in order to investigate his immigration status. More than that, he had ordered Mr. Hernandez to wait out in the hall. I'm sorry, Mr. Reynaga, to wait out in the hall while the proceedings continued. In fact, after that protection matter ended, Mr. Reynaga was still waiting out in the hall because Justice Hernandez had then ordered Mr. Reynaga's wife to remain in the courtroom and threatened her with contempt and arrest if she were to attempt to leave the courtroom to warn her husband that the justice had called up the sheriff's office in order to have him picked up. So he not only had initiated the detention, he had facilitated it, and certainly, as case law from this court makes clear, had played a meaningful part in its operation, and the district court accordingly did not err in determining that he was an integral participant in this constitutional violation. I would note that, again, defendants asked this court to overturn its prior case law regarding integral participation as illogical and violating the concept, the principle against vicarious liability. But Mr. Hernandez was not being found liable based upon some theory akin to vicarious liability. To the contrary, he was being found liable for his own culpable conduct, which culminated in the unconstitutional seizure of Mr. Reynaga. And ultimately, the district court had ample undisputed facts to rely on to find that, in fact, defendants had unlawfully seized Mr. Reynaga based solely on suspicion of unauthorized presence and that the case law had already clearly established that that was a violation, so there was no room for qualified immunity. If anything, defendants continued insistent throughout the course of this litigation, both in the court below and before this court, that the controlling case law should not be applied to them because it's illogical only further underscores the need for accountability under Section 1983. For this reason, we ask this court to affirm the district court's order. Isn't it almost surrealistic to expect that these field agents or field officers be held to the knowledge of all these cases? I guess your answer would be that's the way it is. That would be my second answer. My first answer is this is a common occurrence that goes on every day in counties and cities across the West. Sort of on the job training on the part of these officers, they're assumed to know that which is happening in the real world. And that is the second point, is that the Supreme Court has made clear that what qualifies as reasonable action is determined by whether the officer acted according to the legal rules that were clearly established at the time they acted. And so, yes, there's a responsibility upon the police and sheriff's department, upon the justices, to be abreast of major developments in the law, and they can't use ignorance as a basis to avoid liability. To what extent do they have on-the-spot legal advice if they want to call somebody? It's sort of irrelevant, but it's interesting. I'm sure that varies depending upon the location. Well, anyway, let's see. What is the name of that case from the circuit that ascribes to them or attributes to them the requirements that they know that they can't arrest somebody just because they're here without- Melendrez versus Arpaio. And I would add that was not a novel concept. That same year, the Supreme Court reaffirmed that in Arizona versus the United States. And the year before, in 2011, you had this court again find that while it did not create an egregious violation of the Constitution because it had not been clearly established, that the law did go back over 20 years, back to Gonzales, making clear that an authorized presence itself is not a crime. If there's no further questions, thank you. Thank you, Counsel. Your Honor, for Pedro Hernandez, for the issue, that quote from Boyd about the official's conduct not rising to the level of an unconstitutional violation, that was contradicted a couple years later in Ashcoff v. Iqbal by the Supreme Court because vicarious liability is inapplicable to Bivens and Section 1983 suits, a plaintiff must plead that each government official defendant, through the official's own individual actions, has violated the Constitution. So to the extent that Boyd says you can hold someone responsible for nonviolative conduct, that would be overruled by the Supreme Court. And as to Pedro Hernandez's language, I agree that that's poor language, pick them up. When Skinner was in the courtroom speaking to him, as cited by the district court's order, see what happens. If you guys take them, let me know, please. You may have to call immigration. So even Pedro Hernandez is acknowledging he is not an expert on immigration law. Derek Skinner's going to have to find out more information. And Derek Skinner may take him, he may not take him. He may call immigration, he may not call immigration. It was not an order. By virtue of his very position, he's not signing a warrant. He's merely a person providing information to law enforcement. Regardless of the language of pick them up, it's still just a request for an investigation. He's not an integral participant, he did not violate the Constitution. And he did not violate Miguel Hernandez's rights against unreasonable searches and seizures with that request. Now, we agree, Melendrez is the law of the circuit. And for Derek Skinner, unless Melendrez is narrowed or overturned, his detention and arrest of Miguel Hernandez violated Miguel Hernandez's rights against unreasonable searches and seizures. That's why we request the court to request an en banc reconsideration of Melendrez as it is overbroad. Now, while the Supreme Court did affirm that illegal presence is not a crime, it did not discredit or dispute that it is indicative that a crime may have occurred. Reasonable suspicion is not probable cause. It's a lighter, it's a lower standard. Just when an officer can articulate facts that a crime may have occurred, if someone is illegally present, it's one of two things. It's either illegal entry or they have changed their immigration status, a civil violation. It's one of two things. An officer should be allowed to detain someone briefly to conduct an investigation on whether probable cause exists to arrest them, whether the crime of illegal entry has occurred. Thank you, Your Honor, for your time and consideration, Your Honor. By way of a gratuitous comment, maybe this case proves the truth of the line from the Mikado, the police officer's lot is not a happy one. Which one? I'm sorry, Your Honor. Isn't that from the musical, the Mikado? It's not a legal case. I don't know. Let it pass. Let it pass. I agree with you, Your Honor, that it is tough for them to know what's going on. Derek Skinner, in reality, is not an expert on immigration law. He was unsure, so he had the office call the experts, Immigration and Custom Enforcement, and he only kept Miguel Hernandez long enough for ICE to get back and say what their determination was. Thank you. Okay. Thank you. The matter is submitted at this time.
judges: Wollman, Fernandez, Paez